*Kyle Yancey,* for appellees.

### 40394. SIZEMORE v. THE STATE.

GREGORY, Justice.

The defendant was convicted of the murder of his wife, Linda Sizemore, and sentenced to life imprisonment.

At trial the defendant testified that shortly before the shooting he had unloaded his deer rifle in anticipation of working on it. The defendant expressed his belief that the gun was empty. He testified that his wife walked past him and asked him to turn on the stove. As he stood up to do so, placing the rifle flat against the dining room table, the rifle discharged, shooting his wife in the back.

A ballistics expert testified on behalf of the State that if the defendant's gun had been flush with the table at the time it discharged, gunpowder residue would have appeared on the tablecloth; however, no such residue appeared. The expert also expressed his opinion that if the hammer had been in a closed position at the time of the discharge, as the defendant alleged, the weapon would not have fired. The expert further opined that had the rifle been flat on the table when it discharged, the bullet would have travelled in a straight line. Other State's evidence indicated that the bullet did not travel in a straight line, but that its path had risen 11 inches in a space of 12 feet, passing through the victim's body and a bathroom door before lodging in a wall in the bathroom. From this evidence the State argued that the rifle had not accidentally discharged while lying on a table, but that the defendant had picked it up and fired directly at the victim, thus accounting for the 11-inch increase in the bullet's trajectory. On behalf of the defendant a ballistics expert testified that there was a defect in the design of the trigger mechanism on the model of rifle owned by the defendant. Because of this defect the expert opined that the rifle would discharge if a blow or some other force was applied to the hammer while in a closed position.

The State also showed that the defendant, an insurance agent, was the beneficiary of various life insurance policies on the victim totalling $566,000. The defendant had taken out $100,000 in life insurance on himself. The defendant had purchased a policy on his wife in the amount of $250,000 shortly before her death.[1] The State's

---

[1] The defendant admitted he had applied for a $500,000 life insurance policy on his wife, but this had been rejected due to inadequate income.

handwriting expert expressed his opinion that the victim did not sign her name to the application for this most recent policy. He further stated that the evidence "suggested" the defendant had forged the victim's name to the document. In response to this evidence the defendant testified he and his wife had begun extensive estate planning shortly before her death and that he had intended to purchase additional life insurance on himself as soon as his wife received a raise. The defendant's twelve-year-old daughter testified that shortly before the victim's death she observed the victim signing some papers, but the child could not describe their content. The defendant maintained these were the insurance application forms the State argued he had forged.

1. The trial court did not err in denying defendant's motion for directed verdict of acquittal. Such a verdict is authorized "where there is no conflict in the evidence and the evidence introduced with all reasonable deductions and inferences therefrom shall demand a verdict of acquittal . . ." In this case there were numerous conflicts in the evidence. We cannot say that the evidence demanded a verdict of acquittal.

2. During direct examination of the police officer who investigated the victim's death, the State showed the officer a photograph of the victim. The officer identified the woman in the photograph as the victim of the shooting incident he had investigated in this case. The defendant objected to the admission in evidence of this photograph on the ground that it depicted the victim holding an infant. The defendant argued the prejudicial impact of the photograph outweighed its possible relevance. The trial court reserved its ruling on the photograph, but later admitted it when the State explained it had not been able to locate another photograph of the victim.

We find the photograph depicting the victim in life was, in conjunction with the officer's identification testimony, admissible to prove an "element of the corpus delicti; that is, that the person alleged to have been killed is actually dead, . . ." *McVeigh v. State,* 205 Ga. 326, 337 (53 SE2d 462) (1949). See also, *Zirkle v. State,* 235 Ga. 289 (4) (219 SE2d 389) (1975). It was necessary for the State to establish the identity of the victim. No other evidence of identity was offered at trial. The defendant concedes that a photograph relevant and material to the issues is not excludable on the ground that it is prejudicial. *Stevens v. State,* 242 Ga. 34, 38 (247 SE2d 838) (1978). Under these circumstances we find no error.

3. Nor did the trial court err in admitting pictures which illustrated the trajectory of the fatal bullet. Following the victim's

death an investigating officer positioned a string at the point in the bathroom wall where the bullet came to rest, tautly traced the string through the bullet hole in the bathroom door and ended at the point on the dining room table where the defendant maintained the rifle had been at the time of its discharge. Pictures were then taken of the string in this position.

The defendant argues that since the officer who conducted this test testified to its results at trial, it was not necessary to admit the photographs. There is no merit to this argument. The admission of photographs of scientific experiments is within the discretion of the trial court. *Putman v. State,* 251 Ga. 605 (308 SE2d 145) (1983). We find no abuse of discretion in admitting these photographs.

4. Pam Britt testified that fourteen months prior to the victim's death the defendant asked her for a date. Not knowing the defendant was married, the witness accepted. During the evening the defendant stated his wife was dead and he had to singlehandedly care for three children.

The defendant objected to this testimony on the grounds that it was not relevant and that it placed his character in issue. We do not agree. This testimony was relevant to the issue of motive. It is not rendered inadmissible because it may have incidentally placed the defendant's character in evidence. *Hales v. State,* 250 Ga. 112 (296 SE2d 577) (1982).

*Judgment affirmed. All the Justices concur, except Clarke and Smith, JJ., who dissent as to Divisions 2 and 4 and to the judgment.*

DECIDED JANUARY 5, 1984 —
REHEARING DENIED JANUARY 18, 1984.

*Clarke, Moore & Daly, James J. Daly, Jr.,* for appellant.
*G. Theron Finlayson, District Attorney, Michael J. Bowers, Attorney General, Dennis R. Dunn,* for appellee.